Adam J Schwartz (SBN 251831)
e-service: adam@ajschwartz.com
ADAM J SCHWARTZ, ATTORNEY AT LAW
5670 Wilshire Blvd., Suite 1800
Los Angeles, CA 90036
phone: (323) 455-4016

*Attorneys for Plaintiffs Anthony Henson &*
*Cherie O'Neal*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY HENSON & CHERIE O'NEAL, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>   v.<br><br>SUPER CARE, INC., d/b/a SUPERCARE HEALTH,<br>      Defendant. | Case No. 2:22-cv-2820<br><br>**CLASS ACTION COMPLAINT**<br> 1. **Negligence**<br> 2. **Negligence Per Se**<br> 3. **Breach of Implied Contract**<br> 4. **Unjust Enrichment**<br> 5. **Violation of the California Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code § 56, *et seq.***<br> 6. **Violation of California's Consumer Records Act, Cal. Bus. Code § 1798.80, *et seq.***<br> 7. **Violation of California's Unfair Competition Law, Cal. Bus. Code § 17200, *et seq.***<br><br>**DIVERSITY JURISDICTION UNDER 28 U.S.C. § 1332(d)**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiffs, Anthony Henson and Cherie O'Neal, through their attorneys, bring this Class Action Complaint against the Defendant, Super Care, Inc., d/b/a SuperCare Health, Inc. ("SCHI" or "Defendant"), alleging as follows:

**INTRODUCTION**

1.      In July 2021, SCHI, an at-home medical services company that claims to "manage[] millions of lives annually," lost control over its patients' highly sensitive personal and medical information to cybercriminals in a security breach ("Data Breach"), and then concealed that breach from them for eight months.

2.      Cybercriminals bypassed SCHI's security systems and accessed patient data undetected for over four days, meaning SCHI had no effective means to prevent, discover, or stop a breach before hackers accessed patients' highly sensitive personal and medical records.

3.      After discovering the breach, SCHI did not immediately notify its patients that hackers had breached its systems. Instead, SCHI internally "investigated" the Data Breach for nearly a year while patients were unaware that hackers had accessed their highly sensitive personally identifying information ("PII") and personal health information ("PHI"), including their names, addresses, dates of birth, hospitals or medical groups, patient account numbers, medical record numbers, health insurance information, testing/diagnostic/treatment information, "other health-related information," claim information, and, for some, their Social Security and driver's license numbers.

4.      When SCHI finally disclosed the Data Breach to patients in March 2022, SCHI downplayed the threat it posed, did not disclose how the breach happened, why it took four days for SCHI to discover the breach, whether SCHI investigated what happened to patients' PII and PHI, and why it took SCHI eight months to issue a barebones notice.

5.      The Data Breach's victims, including over 300,000 patients seeking at-home medical resources and care, disclosed their highly sensitive medical and

CLASS ACTION COMPLAINT

personal information to SCHI, expecting that SCHI would safeguard it and timely warn them about security breaches. SCHI violated those duties and California law.

6.    Indeed, on information and belief, SCHI's systems were inadequate and unable to prevent, detect, and stop the unauthorized hack before cybercriminal's pilfered its patient data.

7.    And despite the devastating nature of the Data Breach, SCHI offered Data Breach victims only 12 months of free credit monitoring, which cannot account for the loss of their highly sensitive medical records or the lifelong identity theft threat that the breach poses to patients.

8.    Plaintiffs are current and former SCHI patients and Data Breach victims. They bring this Class Action on behalf of themselves and all others harmed by SCHI's misconduct.

## PARTIES

9.    Plaintiff, Anthony Henson, is a natural person and citizen of California, residing in Victorville, California, where he intends to remain. Mr. Henson is a current SCHI patient and Data Breach victim, which he confirmed by calling SCHI's toll-free confirmation line.

10.    Plaintiff, Cherie O'Neal, is a natural person and citizen of California, residing in Los Angeles, California, where she intends to remain. Ms. O'Neal is a former SCHI patient and Data Breach victim, receiving SCHI's breach notice in or around April 2022.

11.    Defendant, Super Care, Inc. d/b/a SuperCare Health, Inc., is a California corporation, with its principal place of business at 8345 Firestone Blvd., Ste. 210, Downey, California 90241.

## JURISDICTION & VENUE

12.    This Court has subject matter jurisdiction over this action under 28 U.S.C.§ 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are

more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendant.

13.    This Court has personal jurisdiction over Defendant because Defendant is headquartered in this District and does substantial business in California.

14.    Venue is proper because Defendant is headquartered in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## BACKGROUND FACTS

### SCHI

15.    SCHI is a self-described "Comprehensive Post-acute Care Respiratory Services Company Focused on Managing High-Risk Respiratory Patients In Their Homes." *See* SCHI's "Who We Are" page at https://supercarehealth.com/homepage/who-we-are/overview/ (last visited April 23, 2022).

16.    SCHI claims to "manage[] millions of lives annually" and its "goal is to be the most trusted partner managing high-risk respiratory diseases combining both in-home, high-touch care with telehealth and remote monitoring." In so doing, SCHI provides care and collects information on patients' ventilation, oxygen, nebulizer, CPAP, airway clearance, pharmaceutical, medical equipment, and nutrition treatments.

17.    In exchange for its services, SCHI requires its patients to disclose their PHI and PII, including their names, addresses, dates of birth, hospitals or



II.    **Privacy Obligations**

SuperCare is required by law to maintain the privacy of your health information ("Protected Health Information" or "PHI") and to provide you with this Notice of legal duties and privacy practices with respect to your Protected Health Information. When SuperCare uses or discloses your Protected Health Information, it is required to abide by the terms of this Notice (or other n                    e use or disclosure).

Picture 1

4

1    medical groups, patient account numbers, medical record numbers, health

2    insurance information, testing/diagnostic/treatment information, "other health-

3    related information," claim information, and Social Security and driver's license

4    numbers.

5          18.    In collecting this highly sensitive information from patients, SCHI

6    promises to safeguard it according to industry standards and reasonable means.

7    Indeed, SCHI's privacy policies state that its "Privacy Obligations" require it to

8    maintain the privacy of its patients' sensitive data.  *See* SCHI's Privacy Practices

9    notices at https://supercarehealth.com/wp-content/uploads/2022/02/privacy-policy-

10   020322.pdf (last visited April 23, 2022).  *See* Picture 1, *supra.*

11         19.    In its "Website Privacy Policy," which "governs data collection and

12   usage" through SCHI's web portals, SCHI promises to protect patients' data using

13   "industry standard safeguards." *See* SCHI's Privacy Policy at

14   https://supercarehealth.com/homepage/privacy-policy/ (last visited April 23, 2022);

15   *see also* Picture 2, *infra* (next page).

16         20.    But, on information and belief, SCHI does not adhere to these policies

17   or implement reasonable security                            ient PHI and PII, leaving

Picture 2

18   **Security Of Your Personal Information**

19   SuperCare Health uses industry standard safeguards to protect your personal information from unauthorized access, use or

20   disclosure. SuperCare Health safeguards the personally identifiable information provided on computer servers in a controlled,
     secure environment, protected from unauthorized access, use or disclosure. When personal information (such as a SuperCare

21   Health Account ID) is transmitted to other websites, it is protected through the use of encryption, such as the Secure Socket Layer
     (SSL) protocol.

22   Additionally, we maintain physical, electronic, and procedural safeguards to help prevent unauthorized access to personal

23   information. We update and test our technology periodically to improve these protections and to ensure the integrity of personal
     information.

24   it an unguarded target for theft and misuse.

25

26   **SCHI Fails to Safeguard Patient PHI and PII**

27         21.    Plaintiffs and the Class are current and former SCHI patients.

28         22.    As a condition of receiving SCHI's services, SCHI requires its

CLASS ACTION COMPLAINT

patients to disclose their PHI and PII, as described above.

23.    SCHI collects and maintains patient PHI and PII in its computer systems.

24.    In collecting and maintaining the PHI and PII, SCHI agreed it would safeguard the data according to its internal policies and state and federal law.

25.    But on July 23, 2022, cybercriminals bypassed SCHI's inadequate security safeguards and accessed patient PHI and PII.

26.    The hack carried on for four days undetected, meaning SCHI had no effective means to prevent, discover, or stop hackers from pilfering its patients' data.

27.    On July 27, 2022, SCHI discovered the breach and claims it "immediately began containment, mitigation, and restoration efforts to terminate the activity and to secure our network, systems, and data."[1]

28.    But SCHI did not "immediately" notify its patients about the Data Breach. Instead, SCHI internally investigated the breach and "retained independent cybersecurity experts to conduct a forensic investigation into the incident and assist us in determining what happened."

29.    That "investigation" inexplicably carried on for over six months while SCHI's patients were unaware hackers had accessed their highly sensitive PHI and PII.

30.    But SCHI's half-year "investigation" revealed few details about the breach, at least according to SCHI's Data Breach disclosures. Indeed, SCHI disclosed only that patients' data "may" have been "accessed" and that their PHI and PII were only "potentially impacted," downplaying the Data Breach's devastating scale and the threat it poses to patients.

31.    Following SCHI's investigation, SCHI finally notified patients about

---

[1] *See* SCHI's online breach notice at https://supercarehealth.com/supercareprotects/ (last visited April 23, 2022).

CLASS ACTION COMPLAINT

the Data Breach in March 2022 ("Breach Notice")—eight months after the hack.[2]

32.    The Breach Notice did not explain who breached SCHI's systems, how the Data Breach occurred, how SCHI learned about the breach, or why SCHI took eight months to notify patients with a barebones Breach Notice.

33.    The Breach Notice then explained that SCHI "implemented additional security measures to protect our digital environment and minimize the likelihood of future incidents"—measures that should have been in place before the Data Breach.

34.    As a result of SCHI's Data Breach, its victims face a lifetime risk of identity theft, as it potentially includes sensitive information that cannot be changed, like their dates of birth and Social Security numbers. Despite this lifetime risk, SCHI offered its victims only 12 months of identity theft protection services.

35.    On information and belief, SCHI failed to adequately train its employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over patient PHI and PII. SCHI's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing PHI and PII. Further, the Breach Notice makes clear that SCHI cannot, or will not, determine the full scope of the Data Breach, as it has been unable to determine exactly what information was stolen and when.

**Plaintiff Cherie O'Neal's Experience**

36.    Cherie O'Neal is a former SCHI patient.

37.    As a condition of receiving SCHI's services, SCHI required Ms. O'Neal to provide her PHI and PII.

38.    Ms. O'Neal provided her PHI and PII to SCHI and trusted that the company would use reasonable measures to protect it according to SCHI's internal policies and state and federal law.

---

[2] A true and accurate copy of the Breach Notice is attached as Exhibit A.

CLASS ACTION COMPLAINT

39.     Ms. O'Neal has and will spend considerable time and effort monitoring her accounts to protect herself from identity theft. Indeed, Ms. O'Neal has spent 40 hours closing and securing her accounts to guard against identity theft. Ms. O'Neal fears for her personal financial security and uncertainty over what PHI and PII was exposed in the Data Breach. Ms. O'Neal has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

**Plaintiff Anthony Henson's Experience**

40.     Anthony Henson is a current SCHI patient.

41.     As a condition of receiving SCHI's services, SCHI required Mr. Henson to provide his PHI and PII.

42.     Mr. Henson provided his PHI and PII to SCHI and trusted that the company would use reasonable measures to protect it according to SCHI's internal policies and state and federal law.

43.     Mr. Henson has and will spend considerable time and effort monitoring his accounts to protect himself from identity theft. Mr. Henson fears for his personal financial security and uncertainty over what PHI and PII was exposed in the Data Breach. Mr. Henson has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

**Plaintiffs and the Proposed Class Face Significant Risk of Continued Identity Theft**

44.     Plaintiffs and members of the proposed Class have suffered injury from the misuse of their PHI and PII that can be directly traced to Defendant.

45.     As a result of SCHI's failure to prevent the Data Breach, Plaintiffs

and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

      a.  The loss of the opportunity to control how their PHI and PII is used;

      b.  The diminution in value of their PHI and PII;

      c.  The compromise and continuing publication of their PHI and PII;

      d.  Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

      e.  Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

      f.  Delay in receipt of tax refund monies;

      g.  Unauthorized use of stolen PHI and PII; and

      h.  The continued risk to their PHI and PII, which remains in the possession of defendant and is subject to further breaches so long as defendant fails to undertake the appropriate measures to protect the PHI and PII in their possession.

46.    Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00 depending on the type of information obtained.

47.    The value of Plaintiffs and the proposed Class's PHI and PII on the black market is considerable. Stolen PHI and PII trades on the black market for years, and criminals frequently post stolen private information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

48.    It can take victims years to spot identity or PHI and PII theft, giving criminals plenty of time to use that information for cash.

49.    One such example of criminals using PHI and PII for profit is the development of "Fullz" packages.

50.    Cyber-criminals can cross-reference two sources of PHI and PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

51.    The development of "Fullz" packages means that stolen PHI and PII from the Data Breach can easily be used to link and identify it to Plaintiffs and the proposed Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PHI and PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiffs and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiffs and other members of the proposed Class's stolen PHI and PII is being misused, and that such misuse is fairly traceable to the Data Breach.

52.    Defendant disclosed the PHI and PII of Plaintiffs and members of the proposed Class for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the PHI and PII of Plaintiffs and members of the proposed Class to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen PHI and PII.

53.    Defendant's failure to properly notify Plaintiffs and members of the proposed Class of the Data Breach exacerbated Plaintiffs and members of the proposed Class's injury by depriving them of the earliest ability to take appropriate measures to protect their PHI and PII and take other necessary steps to mitigate the harm caused by the Data Breach.

## CLASS ACTION ALLEGATIONS

54.    Plaintiffs sue on behalf of themself and the proposed Class ("Class"), defined as follows:

> All individuals residing in the United States whose PHI and PII was  compromised in the Data Breach disclosed by SCHI in or around March 2022.

Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

55.    Plaintiffs reserve the right to amend the class definition.

56.    This action satisfies the numerosity, commonality, typicality, and adequacy requirements under Fed. R. Civ. P. 23.

a. **Numerosity**. Plaintiffs are representative of the proposed Class, consisting of 300,000 members, far too many to join in a single action;

b. **Ascertainability**. Class members are readily identifiable from information in Defendant's possession, custody, and control;

c. **Typicality**. Plaintiffs' claims are typical of Class member's claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

d. **Adequacy**. Plaintiffs will fairly and adequately protect the proposed Class's interests. Their interests do not conflict with Class members' interests and they have retained counsel experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf, including as lead counsel.

e. **Commonality**. Plaintiffs and the Class's claims raise predominantly common fact and legal questions that a class wide proceeding can answer for all Class members. Indeed, it will be necessary to answer the following questions:

    i. Whether Defendant had a duty to use reasonable care in safeguarding Plaintiffs and the Class's PHI and PII;

    ii. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    iii. Whether Defendant was negligent in maintaining, protecting, and securing PHI and PII;

    iv. Whether Defendant breached contract promises to safeguard Plaintiffs and the Class's PHI and PII;

    v. Whether Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

    vi. Whether Defendant's Breach Notice was reasonable;

    vii. Whether the Data Breach caused Plaintiffs and the Class injuries;

    viii. What the proper damages measure is; and

CLASS ACTION COMPLAINT

ix.  Whether Plaintiffs and the Class are entitled to damages, treble damages, or injunctive relief.

57.    Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method to fairly and efficiently adjudicate the controversy. The damages available to individual plaintiffs are insufficient to make individual lawsuits economically feasible.

## Count I

## Negligence

## (On Behalf of Plaintiffs and the Class)

58.    Plaintiffs reallege all previous paragraphs as if fully set forth below.

59.    Plaintiffs and members of the Class entrusted their PHI and PII to Defendant. Defendant owed to Plaintiffs and other members of the Class a duty to exercise reasonable care in handling and using the PII in its care and custody, including implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that came to pass, and to promptly detect attempts at unauthorized access.

60.    Defendant owed a duty of care to Plaintiffs and members of the Class because it was foreseeable that Defendant's failure to adequately safeguard their PHI and PII in accordance with state-of-the-art industry standards concerning data security would result in the compromise of that PHI and PII—just like the Data Breach that ultimately came to pass. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiffs' and members of the Class's PHI and PII by disclosing and providing access to this information to third parties and by failing to properly supervise both the way the PII was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

61.    Defendant owed to Plaintiffs and members of the Class a duty to

notify them within a reasonable timeframe of any breach to the security of their PHI and PII. Defendant also owed a duty to timely and accurately disclose to Plaintiffs and members of the Class the scope, nature, and occurrence of the Data Breach. This duty is required and necessary for Plaintiffs and members of the Class to take appropriate measures to protect their PHI and PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

62. Defendant owed these duties to Plaintiffs and members of the Class because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security protocols. Defendant actively sought and obtained Plaintiffs' and members of the Class's personal information and PHI and PII.

63. The risk that unauthorized persons would attempt to gain access to the PHI and PII and misuse it was foreseeable. Given that Defendant holds vast amounts of PHI and PII, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the PHI and PII—whether by malware or otherwise.

64. PHI and PII are highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PHI and PII of Plaintiffs and members of the Class's and the importance of exercising reasonable care in handling it.

65. Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the personal information and PHI and PII of Plaintiffs and members of the Class which actually and proximately caused the Data Breach and Plaintiffs and members of the Class's injury. Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiffs and members of

the Class, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiffs and members of the Class's injuries-in-fact. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiffs and members of the Class have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

66.    Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiffs and members of the Class actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PHI and PII by criminals, improper disclosure of their PHI and PII, lost benefit of their bargain, lost value of their PHI and PII, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

## COUNT II

### Negligence Per Se

### (On Behalf of Plaintiffs and the Class)

67.    Plaintiffs and members of the Class incorporate the above allegations as if fully set forth herein.

68.    Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiffs and members of the Class's PHI and PII.

69.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect customers or, in this case, patients' PHI and PII. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of

Defendant's duty to protect Plaintiffs and the members of the Class's sensitive PHI and PII.

70.    Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect its patients' PHI and PII and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PHI and PII Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to its patients in the event of a breach, which ultimately came to pass.

71.    The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and members of the Class.

72.    Defendant had a duty to Plaintiffs and the members of the Class to implement and maintain reasonable security procedures and practices to safeguard Plaintiffs and the Class's PHI and PII.

73.    Defendant breached its respective duties to Plaintiffs and members of the Class under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs and members of the Class's PHI and PII.

74.    Defendant's violation of Section 5 of the FTC Act and its failure to comply with applicable laws and regulations constitutes negligence per se.

75.    But for Defendant's wrongful and negligent breach of its duties owed to Plaintiffs and members of the Class, Plaintiffs and members of the Class would not have been injured.

76.    The injury and harm suffered by Plaintiffs and members of the Class were the reasonably foreseeable result of Defendant's breach of their duties.

Defendant knew or should have known that Defendant was failing to meet its duties and that its breach would cause Plaintiffs and members of the Class to suffer the foreseeable harms associated with the exposure of their PHI and PII.

77.    Had Plaintiffs and members of the Class known that Defendant did not adequately protect their PII, Plaintiffs and members of the Class would not have entrusted Defendant with their PHI and PII.

78.    As a direct and proximate result of Defendant's negligence per se, Plaintiffs and members of the Class have suffered harm, including loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; lost control over the value of PHI and PII; unreimbursed losses relating to fraudulent charges; losses relating to exceeding credit and debit card limits and balances; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen personal information, entitling them to damages in an amount to be proven at trial.

## COUNT III

### Breach of an Implied Contract

### (On Behalf of Plaintiffs and the Class)

79.    Plaintiffs and members of the Class incorporate the above allegations as if fully set forth herein.

80.    Defendant offered Plaintiffs and members of the Class medical goods and services in exchange for their PHI and PII.

81.    In turn, and through internal policies, Defendant agreed it would not disclose the PHI and PII it collects to unauthorized persons. Defendant also promised to safeguard patient PHI and PII.

82.    Plaintiffs and the members of the Class accepted Defendant's offer by providing PHI and PII to Defendant in exchange for Defendant's goods and services.

CLASS ACTION COMPLAINT

83.    Implicit in the parties' agreement was that Defendant would provide Plaintiffs and members of the Class with prompt and adequate notice of all unauthorized access and/or theft of their PHI and PII.

84.    Plaintiffs and the members of the Class would not have entrusted their PHI and PII to Defendant in the absence of such agreement with Defendant.

85.    Defendant materially breached the contract(s) it had entered with Plaintiffs and members of the Class by failing to safeguard such information and failing to notify them promptly of the intrusion into its computer systems that compromised such information. Defendant further breached the implied contracts with Plaintiffs and members of the Class by:

      i.   Failing to properly safeguard and protect Plaintiffs and members of the Class's PHI and PII;

      j.   Failing to comply with industry standards as well as legal obligations that are necessarily incorporated into the parties' agreement; and

      k.   Failing to ensure the confidentiality and integrity of electronic PHI and PII that Defendant created, received, maintained, and transmitted.

86.    The damages sustained by Plaintiffs and members of the Class as described above were the direct and proximate result of Defendant's material breaches of its agreement(s).

87.    Plaintiffs and members of the Class have performed as required under the relevant agreements, or such performance was waived by the conduct of Defendant.

88.    The covenant of good faith and fair dealing is an element of every contract. All such contracts impose upon each party a duty of good faith and fair dealing. The parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the

18

parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

89.    Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.

90.    Defendant failed to advise Plaintiffs and members of the Class of the Data Breach promptly and sufficiently.

91.    In these and other ways, Defendant violated its duty of good faith and fair dealing.

92.    Plaintiffs and members of the Class have sustained damages because of Defendant's breaches of its agreement, including breaches thereof through violations of the covenant of good faith and fair dealing.

## COUNT IV

### Unjust Enrichment

### (On Behalf of Plaintiffs and the Class)

93.    Plaintiffs and members of the Class incorporate the above allegations as if fully set forth herein.

94.    This claim is pleaded in the alternative to the breach of implied contractual duty claim.

95.    Plaintiffs and members of the Class conferred a benefit upon Defendant in providing the PHI and PII to Defendant.

96.    Defendant appreciated or had knowledge of the benefits conferred upon itself by Plaintiffs and members of the Class. Defendant also benefited from the receipt of Plaintiffs and members of the Class's PHI and PII, as this was used to facilitate the services and goods it sold to Plaintiffs and the Class.

97.    Under principals of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiffs and the proposed Class's services

and their PHI and PII because Defendant failed to adequately protect their PHI and PII. Plaintiffs and the proposed Class would not have provided their PHI and PII to Defendant had they known Defendant would not adequately protect their PHI and PII.

98.   Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiffs and members of the Class all unlawful or inequitable proceeds received by it because of its misconduct and Data Breach.

**COUNT V**

**Violation of CA Confidentiality of Medical Information Act ("CMIA")**

**Cal. Civ. Code § 56,** *et seq.*

**(On Behalf of Plaintiffs and the Class)**

99.   Plaintiffs and members of the Class incorporate the above allegations as if fully set forth herein.

100.   Section 56.10(a) of the California Civil Code provides that "[a] provider of health care, health care service plan, or contractor shall not disclose medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization[.]"

101.   Defendant is a "contractor" within the meaning of Civil Code § 56.05(d) within the meaning of Civil Code § 56.06 and/or a "business organized for the purpose of maintaining medical information" and/or a "business that offers software or hardware to consumers . . . that is designed to maintain medical information" within the meaning of Civil Code § 56.06(a) and (b), and maintained and continues to maintain "medical information," within the meaning of Civil Code § 56.05(j), for "patients" of Defendant, within the meaning of Civil Code § 56.05(k).

102.   Plaintiffs and the Class are "patients" within the meaning of Civil Code § 56.05(k). They are "endanger[ed]" within the meaning of Civil Code §

56.05(e) because Plaintiffs and the Class fear that disclosure of their medical information could subject them to harassment or abuse.

103.    Plaintiffs and the respective Class members, as patients, had their individually identifiable "medical information," within the meaning of Civil Code § 56.05(j), created, maintained, preserved, and stored on Defendant's computer network at the time of the breach.

104.    Defendant, through inadequate security, allowed unauthorized third-party access to Plaintiffs and each Class member's medical information, without the prior written authorization of Plaintiffs and the Class members, as required by Civil Code § 56.10 of the CMIA.

105.    In violation of Civil Code § 56.10(a), Defendant disclosed Plaintiffs and the Class members' medical information without first obtaining an authorization. Plaintiffs and the Class members' medical information was viewed by unauthorized individuals as a direct and proximate result of Defendant's violation of Civil Code § 56.10(a).

106.    In violation of Civil Code § 56.10(e), Defendant further disclosed Plaintiffs and the Class members' medical information to persons or entities not engaged in providing direct health care services to Plaintiffs or the Class members or their providers of health care or health care service plans or insurers or self-insured employers.

107.    Defendant violated Civil Code § 56.101 of the CMIA through its failure to maintain and preserve the confidentiality of the medical information of Plaintiffs and the Class.

108.    In violation of Civil Code § 56.101(a), Defendant created, maintained, preserved, stored, abandoned, destroyed, or disposed of Plaintiffs and the Class members' medical information in a manner that failed to preserve and breached the confidentiality of the information contained therein. Plaintiffs and the Class members' medical information was viewed by unauthorized individuals as a direct

21

and proximate result of Defendant's violation of Civil Code § 56.101(a).

109.   In violation of Civil Code § 56.101(a), Defendant negligently created, maintained, preserved, stored, abandoned, destroyed, or disposed of Plaintiffs and the Class members' medical information. Plaintiffs and the Class members' medical information was viewed by unauthorized individuals as a direct and proximate result of Defendant's violation of Civil Code § 56.101(a).

110.   Plaintiffs and the Class members' medical information that was the subject of the Data Breach included "electronic medical records" or "electronic health records" as referenced by Civil Code § 56.101(c) and defined by 42 U.S.C. § 17921(5).

111.   In violation of Civil Code § 56.101(b)(1)(A), Defendant's electronic health record system or electronic medical record system failed to protect and preserve the integrity of electronic medical information. Plaintiffs and the Class members' medical information was viewed by unauthorized individuals as a direct and proximate result of Defendant's violation of Civil Code § 56.101(b)(1)(A).

112.   Defendant violated Civil Code § 56.36 of the CMIA through its failure to maintain and preserve the confidentiality of the medical information of Plaintiffs and the Class.

113.   As a result of Defendant's above-described conduct, Plaintiffs and the Class have suffered damages from the unauthorized disclosure and release of their individual identifiable "medical information" made unlawful by Civil Code §§ 56.10, 56.101, 56.36.

114.   As a direct and proximate result of Defendant's above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach, and violation of the CMIA, Plaintiffs and the Class members have suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, inter alia, (i) an imminent, immediate and the continuing increased risk of identity theft, identity fraud and medical fraud

1 – risks justifying expenditures for protective and remedial services for which they

2 are entitled to compensation, (ii) invasion of privacy, (iii) breach of the

3 confidentiality of their PII/PHI, (iv) statutory damages under the California CMIA,

4 (v) deprivation of the value of their PII/PHI, for which there is a well-established

5 national and international market, and/or (vi) the financial and temporal cost of

6 monitoring their credit, monitoring their financial accounts, and mitigating their

7 damages.

8        115.    Plaintiffs, individually and for each member of the Class, seek

9 nominal damages of one thousand dollars ($1,000) for each violation under Civil

10 Code § 56.36(b)(1), and actual damages suffered, if any, pursuant to Civil Code §

11 56.36(b)(2), injunctive relief, as well as punitive damages of up to $3,000 per

12 Plaintiffs and each Class member, and attorneys' fees, litigation expenses and court

13 costs, pursuant to Civil Code § 56.35.

14                                **COUNT VI**

15              **Violation of California's Consumer Records Act**

16                    **Cal. Bus. Code § 1798.80,** *et seq.*

17                 **(On behalf of Plaintiffs and the Class)**

18        116.    Plaintiffs incorporate by reference all preceding allegations.

19        117.    Under California law, any "person or business that conducts business

20 in California, and that owns or licenses computerized data that includes personal

21 information" must "disclose any breach of the system following discovery or

22 notification of the breach in the security of the data to any resident of California

23 whose unencrypted personal information was, or is reasonably believed to have

24 been, acquired by an unauthorized person." (CAL. CIV. CODE § 1798.2.) The

25 disclosure must "be made in the most expedient time possible and without

26 unreasonable delay" (*Id.*), but "immediately following discovery [of the breach], if

27 the personal information was, or is reasonably believed to have been, acquired by

28 an unauthorized person." (CAL. CIV. CODE § 1798.82, subdiv. b.)

118.    The data breach constitutes a "breach of the security system" of Defendant.

119.    An unauthorized person acquired the personal, unencrypted information of Plaintiffs and the Class.

120.    Defendant knew that an unauthorized person had acquired the personal, unencrypted information of Plaintiffs and the Class, but waited eight months to notify them. Eight months was an unreasonable delay under the circumstances.

121.    Defendant's unreasonable delay prevented Plaintiffs and the Class from taking appropriate measures from protecting themselves against harm.

122.    Because Plaintiffs and the Class were unable to protect themselves, they suffered incrementally increased damages that they would not have suffered with timelier notice.

123.    Plaintiffs and the Class are entitled to equitable relief and damages in an amount to be determined at trial.

## COUNT VII

### Violation of California's Unfair Competition Law

### Cal. Bus. Code § 17200, *et seq.*

### (On behalf of Plaintiffs and the Class)

124.    Plaintiffs incorporate all previous paragraphs as if fully set forth below.

125.    Defendant engaged in unlawful and unfair business practices in violation of Cal. Bus. & Prof. Code § 17200, et seq. which prohibits unlawful, unfair, or fraudulent business acts or practices ("UCL").

126.    Defendant's conduct is unlawful because it violates the California Consumer Privacy Act of 2018, Civ. Code § 1798.100, et seq. (the "CCPA"), and other state data security laws.

127.    Defendant stored the PHI and PII of Plaintiffs and the Class in its

computer systems and knew or should have known it did not employ reasonable, industry standard, and appropriate security measures that complied with applicable regulations and that would have kept Plaintiffs and the Class's PHI and PII secure and prevented the loss or misuse of that PHI and PII.

128.   Defendant failed to disclose to Plaintiffs and the Class that their PHI and PII was not secure. However, Plaintiffs and the Class were entitled to assume, and did assume, that Defendant had secured their PHI and PII. At no time were Plaintiffs and the Class on notice that their PHI and PII was not secure, which Defendant had a duty to disclose.

129.   Defendant also violated California Civil Code § 1798.150 by failing to employ reasonable security measures, resulting in an unauthorized access and exfiltration, theft, or disclosure of Plaintiffs and the Class's PHI and PII.

130.   Had Defendant complied with these requirements, Plaintiffs and the Class would not have suffered the damages related to the data breach.

131.   Defendant's conduct was unlawful, in that it violated the Consumer Records Act.

132.   Defendant's conduct was also unfair, in that it violated a clear legislative policy in favor of protecting consumers from data breaches.

133.   Defendant's conduct is an unfair business practice under the UCL because it was immoral, unethical, oppressive, and unscrupulous and caused substantial harm. This conduct includes employing unreasonable and inadequate data security despite its business model of actively collecting PHI and PII.

134.   Defendant also engaged in unfair business practices under the "tethering test." Its actions and omissions, as described above, violated fundamental public policies expressed by the California Legislature. *See, e.g.*, Cal. Civ. Code § 1798.1 ("The Legislature declares that . . . all individuals have a right of privacy in information pertaining to them . . . The increasing use of computers . . . . has greatly magnified the potential risk to individual privacy that can occur from

the maintenance of personal information."); Cal. Civ. Code § 1798.81.5(a) ("It is the intent of the Legislature to ensure that personal information about California residents is protected."); Cal. Bus. & Prof. Code § 22578 ("It is the intent of the Legislature that this chapter [including the Online Privacy Protection Act] is a matter of statewide concern."). Defendant's acts and omissions thus amount to a violation of the law.

135.    Instead, Defendant made the PHI and PII of Plaintiffs and the Class accessible to scammers, identity thieves, and other malicious actors, subjecting Plaintiffs and the Class to an impending risk of identity theft. Additionally, Defendant's conduct was unfair under the UCL because it violated the policies underlying the laws set out in the prior paragraph.

136.    As a result of those unlawful and unfair business practices, Plaintiffs and the Class suffered an injury-in-fact and have lost money or property.

137.    The injuries to Plaintiffs and the Class greatly outweigh any alleged countervailing benefit to consumers or competition under all of the circumstances.

138.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misconduct alleged in this complaint.

139.    Therefore, Plaintiffs and the Class are entitled to equitable relief, including restitution of all monies paid to or received by Defendant; disgorgement of all profits accruing to Defendant because of its unfair and improper business practices; a permanent injunction enjoining Defendant's unlawful and unfair business activities; and any other equitable relief the Court deems proper.

## PRAYER FOR RELIEF

Plaintiffs and members of the Class demand a jury trial on all claims so triable and request that the Court enter an order:

A.    Certifying this case as a class action on behalf of Plaintiffs and the proposed Class, appointing Plaintiffs as class representatives, and appointing their counsel to represent the Class;

B.    Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiffs and the Class;

C.    Awarding injunctive relief as is necessary to protect the interests of Plaintiffs and the Class;

D.    Enjoining Defendant from further deceptive practices and making untrue statements about the Data Breach and the stolen PHI and PII;

E.    Awarding Plaintiffs and the Class damages that include applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F.    Awarding restitution and damages to Plaintiffs and the Class in an amount to be determined at trial;

G.    Awarding attorneys' fees and costs, as allowed by law;

H.    Awarding prejudgment and post-judgment interest, as provided by law;

I.    Granting Plaintiffs and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J.    Granting such other or further relief as may be appropriate under the circumstances.

[LEFT BLANK]

[CONTINUES NEXT PAGE]

1

## JURY DEMAND

2    Plaintiffs demands a trial by jury on all issues so triable.

3

4    Respectfully submitted and dated this 27th day of April 2022:

5

6

7    By: _____

8    Adam J Schwartz (SBN 251831)
9    e-service: adam@ajschwartz.com
10   *ADAM J SCHWARTZ, ATTORNEY AT LAW*
     5670 Wilshire Blvd., Suite 1800
11   Los Angeles, CA 90036
     phone: (323) 455-4016
12

13   Samuel J. Strauss
     e-service: sam@turkestrauss.com
14   Raina C. Borrelli
     e-service: raina@turkestrauss.com
15   Alex Phillips
16   e-service: alexp@turkestrauss.com
     *TURKE & STRAUSS LLP*
17   613 Williamson St., Suite 201
     Madison, WI 53703
18   Telephone (608) 237-1775
19   Facsimile: (608) 509-4423

20

21   *Attorneys for Plaintiffs*

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT